*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LEE ROY STALLMAN,

   Plaintiff-Appellee,

v

DARIUS ZAJAC,

   Defendant-Appellant,

and

OAKLAND COUNTY SHERIFF'S DEPARTMENT and OAKLAND COUNTY,

   Defendants.

UNPUBLISHED
July 30, 2026
9:10 AM

No. 371970
Oakland Circuit Court
LC No. 2023-200432-CZ

LEE ROY STALLMAN,

   Plaintiff-Appellant/Cross-Appellee,

v

DARIUS ZAJAC,

   Defendant-Appellee/Cross-Appellant,

and

OAKLAND COUNTY SHERIFF'S DEPARTMENT and OAKLAND COUNTY,

   Defendants-Appellees.

No. 372218
Oakland Circuit Court
LC No. 2023-200432-CZ

Before: RIORDAN, P.J., and O'BRIEN and YOUNG, JJ.

PER CURIAM.

In Docket No. 371970, defendant Oakland County Sheriff's Deputy Darius Zajac appeals as of right the trial court's July 18, 2024 written opinion and order implicitly denying his motion for summary disposition under MCR 2.116(C)(7) (governmental immunity). In Docket No. 372218, plaintiff Lee Roy Stallman appeals by leave granted[1] the same order to the extent that the trial court ruled against his motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact).

This case involves an alleged wrongful arrest by Deputy Zajac of Stallman outside the premises of Stallman's former employer. Stallman asserted that the arrest was unjustified, and he sued Deputy Zajac, the Oakland County Sheriff's Department (OCSD), and Oakland County, raising various claims such as false arrest. The trial court eventually granted summary disposition in favor of Oakland County but, essentially, denied the competing motions for summary disposition maintained by Deputy Zajac, OCSD, and Stallman himself. Simply put, the primary issues before us are as follows: (1) whether Deputy Zajac is entitled to summary disposition on the basis of individual governmental immunity under MCR 2.116(C)(7) and the Governmental Tort Liability Act (GTLA), MCL 691.1401 *et seq*.; (2) whether Stallman, Deputy Zajac, or neither of those two parties is entitled to summary disposition under MCR 2.116(C)(10) as to Stallman's claims against Deputy Zajac for false arrest, false imprisonment, malicious prosecution, and intentional infliction of emotional distress (IIED); and (3) whether Stallman established a genuine issue of material fact as to his claims against Oakland County for vicarious liability and third-party beneficiary under MCR 2.116(C)(10), and whether Oakland County is entitled to immunity under MCR 2.116(C)(7).

For the reasons set forth, we conclude that Deputy Zajac is entitled to immunity and, alternatively, that Stallman failed to establish a genuine issue of material fact as to his four intentional-tort claims against Deputy Zajac. We also conclude that Oakland County is entitled to immunity and, alternatively, Stallman failed to establish a genuine issue of material fact as to his two remaining claims against Oakland County. Therefore, we affirm the trial court's grant of summary disposition in favor of Oakland County, reverse that court's denial of summary disposition in favor of Deputy Zajac, and remand to that court for entry of summary disposition in favor of all three defendants.

## I. FACTS

This case arose after Stallman left his employment with Sweetland Transportation and allegedly did not receive his final paycheck. According to Stallman, he repeatedly attempted to get his paycheck, or proof that it was mailed, from Sweetland but was unable to do so. On October 31, 2019, Stallman called the OCSD to request assistance with obtaining his paycheck and some

---

[1] *Stallman v Zajac*, unpublished order of the Court of Appeals, entered March 14, 2025 (Docket No. 372218). That order consolidated these two appeals as well.

-2-

personal belongings that he allegedly left at work on his last day. Deputy Zajac was dispatched to the scene.

When he arrived, Deputy Zajac spoke with Stallman outside the building. According to Deputy Zajac, Stallman began discussing a recent event in which a disgruntled employee at another company shot and killed an office worker because he was not promptly paid. Stallman did not recall discussing that event but said during his deposition that if he did discuss that event, he did so to explain why he contacted law enforcement—to avoid accusations of violence by Sweetland staff. Deputy Zajac went inside to discuss the issue with staff, who reported that the paycheck had been mailed and that they searched for Stallman's personal property but found nothing. The staff seemed concerned about Stallman's behavior and asked Deputy Zajac to tell Stallman to return the following Monday when the business owner would be present. Deputy Zajac did so.

After Deputy Zajac left the office, Stallman began calling Sweetland. He left two voicemails at the office, and in one of them, he threatened to follow staff to their homes and other places they might visit, including schools. Stallman also mentioned the shooting that he allegedly discussed during his meeting with Deputy Zajac. When asked at his deposition why he mentioned that shooting, Stallman testified, "They're playing games with people's money," and "you don't play games with people's money. Bad things happen."

When Stallman called again, a staff employee answered and asked Stallman to stop calling. The staff then contacted Deputy Zajac and asked him to return to the office, where they played the voicemails for him. According to Deputy Zajac, the staff seemed frightened and concerned about their safety, and they asked him to contact Stallman "to advise him of the trespass law." Deputy Zajac called Stallman and instructed him not to call anymore because he was engaging in "harassment." Deputy Zajac also told Stallman that if he returned to the business, he would be arrested because returning to the business would constitute a crime. Stallman testified that he understood the warning to the effect that he was "trespassed" from the business.

The next day, Deputy Zajac was dispatched to another location near Sweetland for an unrelated matter. While driving in that area, Deputy Zajac saw a vehicle that was similar to Stallman's vehicle driving away from Sweetland, so he went to Sweetland to check on the staff. The staff reported that Stallman had not returned, so Deputy Zajac drove to the corner of the parking lot and began writing a report on the unrelated matter.

According to Stallman, he was merely driving to his nearby home when he saw Deputy Zajac who was approaching Sweetland. Stallman said Deputy Zajac gave him "a dirty look," so he did a "U-turn" to follow Deputy Zajac to Sweetland to "confront" him about that dirty look. Stallman stopped on the public road running alongside Sweetland because he "had no plans of stepping foot on that property ever" and awaited Deputy Zajac. Stallman exited his vehicle and, a short while later, waved at Sweetland staff when they were walking in the parking lot. The staff was "shocked when they seen me see them" and "scurried away" into the building. About 30 or 45 seconds later, Deputy Zajac approached Stallman.

According to Deputy Zajac, while he was writing his report on the unrelated matter, two staff employees "were running from the building towards my patrol car and I." The staff informed Deputy Zajac that Stallman was yelling at passing vehicles or truck drivers and making hand

gestures in the direction of the Sweetland building.  Deputy Zajac believed that the staff employees were afraid of Stallman.

Assuming that Stallman was ignoring specific instructions not to return to Sweetland, Deputy Zajac drove around to the front of the building to confront Stallman.  Despite being aware of Stallman's previous statements about a workplace shooting, Deputy Zajac planned to give Stallman a misdemeanor ticket and release him.  However, when Stallman came into view, Deputy Zajac believed that he saw Stallman yelling because of his mouth and arm motions, although he could not hear anything from Stallman.  Then, when Deputy Zajac arrived, exited his car, and approached Stallman, he rapidly and aggressively advanced toward the Deputy, which caused him to feel threatened.  Deputy Zajac immediately informed Stallman that he was being arrested.  When Stallman asked why, Deputy Zajac told him for being a disorderly person.  Stallman responded that he was not under arrest because he had not violated any laws.

Deputy Zajac tried to physically restrain Stallman, who repeatedly pulled away.  According to Deputy Zajac and a staff employee who watched the altercation, Stallman was attempting to get to the passenger side of his truck.  Stallman acknowledged that he pulled away from Deputy Zajac but indicated at his deposition that he did so because he had not committed a crime.  When Deputy Zajac was unable to restrain Stallman, Deputy Zajac deployed his Taser on him.  Doing so was successful, and Deputy Zajac then handcuffed Stallman.

A subsequent search of Stallman's vehicle revealed a loaded handgun on his passenger-side seat.  Stallman had a license to concealed carry the weapon.  Afterward, Deputy Zajac prepared a police report, which indicated that trespassing, disorderly conduct, and resisting or obstructing an officer were possible charges.  Deputy Zajac wrote in his report that the roadway in front of Sweetland where Stallman was arrested was a "private" roadway, although at the time he was not certain that it actually was private.  Deputy Zajac explained at his deposition that "I wasn't sure.  I was asking other deputies.  They thought it was a private drive because it's out in the north end of Oxford off of a main road of Oakwood," and "[t]he general consensus was that it was most likely a private drive."[2]

Eventually, after the prosecution reviewed the case, Stallman was charged with resisting or obstructing an officer, MCL 750.81d.  Stallman was bound over for trial after a preliminary examination at which the district court determined, after hearing testimony from Deputy Zajac, that there was probable cause to believe that Stallman committed the charged crime.  In the circuit court, Stallman moved to dismiss the case, alleging that Deputy Zajac unlawfully arrested him.

The circuit court held an evidentiary hearing at which Deputy Zajac testified that on November 1, 2019, when he first approached Stallman after speaking with Sweetland staff, he did not directly see or hear Stallman acting in the manner described to him by staff.  However, Deputy Zajac explained, while he did not see or hear Stallman yelling at staff or other individuals, he did observe Stallman "yelling" when he "pull[ed] up" in his vehicle.  In other words, Deputy Zajac

---

[2] The roadway on which Stallman was arrested was thereafter determined to be public, such that the parties do not dispute on appeal that Stallman was not "trespassing" on Sweetland property when he was arrested.

-4-

indicated, Stallman was yelling with nobody else around.[3]  Further, on cross-examination, Deputy Zajac seemingly agreed with defense counsel that when he told Stallman that Stallman was under arrest, he had not directly observed Stallman commit a crime.  After hearing this testimony, the circuit court ruled that because Michigan law did not permit Deputy Zajac to arrest Stallman for disorderly conduct unless Deputy Zajac actually observed that crime, Deputy Zajac engaged in an unlawful arrest.  And, because Stallman was permitted to resist an unlawful arrest, the circuit court granted Stallman's motion to dismiss the case.  Nonetheless, the circuit court observed that "I understand why the officer was concerned with the behavior of Mr. Stallman and with the reports from the employees of his former employer," and "I understand why he had it in his head that there was going to be trouble here and he might want to put Mr. Stallman under arrest."

Stallman then initiated the present civil case, originally against Deputy Zajac only. Stallman later amended the complaint to add the OCSD and Oakland County.  With respect to Deputy Zajac, Stallman pleaded claims of false arrest, false imprisonment, malicious prosecution, and IIED.  With respect to the OCSD and Oakland County, Stallman alleged that those two entities should be held vicariously liable for Deputy Zajac's intentional torts and, alternatively, Stallman claimed that he was entitled to relief from Oakland County as an intended third-party beneficiary of a contract wherein Oakland County agreed to indemnify Deputy Zajac for damages arising out of his conduct as a sheriff's deputy.

Stallman moved for summary disposition under MCR 2.116(C)(10), primarily relying on the circuit court's determination that Deputy Zajac did not have probable cause to arrest him. Stallman argued that this determination fulfilled the requirements for the claims of false arrest and false imprisonment.  As for malicious prosecution, Stallman argued that there was no dispute that Deputy Zajac included false facts in his police report, which was provided to the prosecution. Specifically, Deputy Zajac admitted in his deposition testimony that he misstated the facts in his report about whether the roadway was private and that he saw Stallman yelling at a truck driver. Stallman asserted that Deputy Zajac was liable for IIED because he arrested Stallman without probable cause, used a Taser on him, and made him an unwilling participant in the justice system. Finally, Stallman argued that Oakland County's liability flowed from Deputy Zajac's improper actions either under the doctrine of vicarious liability or because of the indemnification agreement.

Oakland County also moved for summary disposition, arguing that Stallman had not properly served it with the amended complaint naming it as a party.  Alternatively, Oakland County asserted that it was entitled to absolute governmental immunity under the GTLA because caselaw was clear that it could not be held vicariously liable for the intentional torts of its employees.  As for Stallman's third-party beneficiary claim, Oakland County asserted that Stallman did not have standing to make the claim, had no judgment to enforce under the agreement, and was not an intended third-party beneficiary.

In addition, Deputy Zajac and the OCSD also moved for summary disposition.  First, the OCSD argued that it is not subject to suit because it is not legally separate from the county itself. See *Sumner v Wayne Co*, 94 F Supp 2d 822, 827 (ED Mich, 2000).  Second, Deputy Zajac argued

---

[3] This testimony was slightly inconsistent with his police report, in which he indicated that when he first approached Stallman, he observed Stallman yelling at a truck driver.

-5-

that he was entitled to summary disposition because Stallman's four individual claims against him are barred by the statute of limitations, he is protected by individual governmental immunity, and the individual claims fail on the merits.

In a nine-page written opinion and order, the trial court decided the three motions without holding oral argument. The trial court first granted Oakland County's motion for summary disposition because Stallman served the wrong person under the court rules, and because Oakland County could not be held vicariously liable for the alleged intentional torts of Deputy Zajac under the GTLA. Next, the trial court denied Deputy Zajac's motion for summary disposition because the four individual claims against him were timely maintained within the applicable periods of limitation; whether he had probable cause to arrest Stallman depended on "disputed facts," particularly in light of the fact that the criminal case was dismissed for lack of probable cause; and because Deputy Zajac did not otherwise show that the individual claims fail on the merits.[4] Finally, the trial court denied Stallman's motion for summary disposition for essentially these same reasons, i.e., that there are "fact issues remaining" as to the four individual claims against Deputy Zajac.[5]

On appeal, the issues before us are as follows: (1) whether Deputy Zajac is entitled to summary disposition on the basis of individual governmental immunity under MCR 2.116(C)(7) and the GTLA; (2) whether Stallman, Deputy Zajac, or neither of them, is entitled to summary disposition under MCR 2.116(C)(10) as to Stallman's claims for false arrest, false imprisonment, malicious prosecution, and IIED; and (3) whether Stallman established a genuine issue of material fact as to his claims against Oakland County for vicarious liability and third-party beneficiary under MCR 2.116(C)(10) and, as such, whether Oakland County is entitled to immunity. We will address each of those three respective primary issues in Parts III, IV, and V, *infra*. Further, we will briefly address the secondary issues of collateral estoppel and statute of limitations in Part IV, and service of process on Oakland County in Part V.

## II. STANDARD OF REVIEW

"This Court reviews de novo the grant or denial of a motion for summary disposition to determine if the moving party is entitled to judgment as a matter of law." *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020) (quotation marks and citation omitted). "[T]he determination regarding the applicability of governmental immunity and a

---

[4] The trial court did not address the issue of governmental immunity, but because it denied Deputy Zajac's motion for summary disposition, it may be inferred that its ruling implicitly determined that he is not entitled to immunity.

[5] Now, before us, in Docket No. 371970, Deputy Zajac appealed the trial court's opinion and order by right to the extent that it implicitly denied his motion for summary disposition on the basis of governmental immunity. See MCR 7.202(6)(a)(*v*). In Docket No. 372218, Stallman filed an application for leave to appeal from the same opinion and order, arguing that he is entitled to summary disposition on all six claims. We granted the application and consolidated the two cases. *Stallman v Zajac*, unpublished order of the Court of Appeals, entered March 14, 2025 (Docket No. 372218).

statutory exception to governmental immunity is a question of law that is also subject to review de novo." *Snead v John Carlo, Inc*, 294 Mich App 343, 354; 813 NW2d 294 (2011).

Summary disposition is appropriate under MCR 2.116(C)(3) when "[t]he service of process was insufficient." Further, summary disposition is appropriate under MCR 2.116(C)(7) on the basis of "immunity granted by law." "In deciding a motion under MCR 2.116(C)(7), the court considers all documentary evidence submitted by the parties in the light most favorable to the nonmoving party." *Citizens Ins Co of Am v Univ Physician Group*, 319 Mich App 642, 648; 902 NW2d 896 (2017). "If there is no factual dispute, whether a plaintiff's claim is barred . . . is a matter of law for the court to determine." *Kincaid v Cardwell*, 300 Mich App 513, 523; 834 NW2d 122 (2013). "However, if the parties present evidence that establishes a question of fact concerning whether the defendant is entitled to immunity as a matter of law, summary disposition is inappropriate." *Id*.

Summary disposition is appropriate under MCR 2.116(C)(10) when "there is no genuine issue as to any material fact." "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). "A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the affidavits or other documentary evidence show that there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996).

## III.  GOVERNMENTAL IMMUNITY

First, the parties dispute whether Deputy Zajac is entitled to governmental immunity for his actions of subduing and arresting Stallman, which eventually led to criminal charges against Stallman which the circuit court dismissed. We conclude that Deputy Zajac is entitled to immunity.[6]

MCL 691.1407(2) provides:

Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or

---

[6] Cases such as the instant case generally raise two issues: (1) whether the governmental employee is entitled to immunity and, if not, (2) whether the plaintiff has pleaded and shown each element of his or her claim. See *Sullivan v Mich*, 328 Mich App 74, 79-80; 935 NW2d 413 (2019). Thus, in Part III, we address whether Deputy Zajac is entitled to governmental immunity. In Part IV, while ultimately not necessary for our disposition of the case, we also address whether Stallman showed the elements of his respective claims against Deputy Zajac.

member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.

> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

When a plaintiff pleads an intentional tort against an individual governmental employee, courts should apply the test set forth in *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1984), to determine whether that employee is entitled to immunity. *Odom v Wayne Co*, 482 Mich 459, 461; 760 NW2d 217 (2008). In particular:

> If the plaintiff pleaded an intentional tort, determine whether the defendant established that he is entitled to individual governmental immunity under the *Ross* test by showing the following:

> (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,

> (b) the acts were undertaken in good faith, or were not undertaken with malice, and

> (c) the acts were discretionary, as opposed to ministerial. [*Id*. at 480.]

With regard to the first element, "a governmental employee who reasonably believes that he was authorized to take certain actions, but later learns that he was mistaken" is protected. *Id*. at 473. With regard to the second element, a lack of good faith is "malicious intent, capricious action or corrupt conduct or willful and corrupt misconduct." *Id*. at 474 (cleaned up). "[W]illful and wanton misconduct is made out only if the conduct alleged shows an intent to harm or, if not that, such indifference to whether harm will result as to be the equivalent of a willingness that it does." *Id*. at 475 (quotation marks and citation omitted). With regard to the third element, "[d]iscretionary acts require personal deliberation, decision and judgment." *Id*. at 476 (quotation marks and citations omitted). For example, discretionary acts include instances in which "[a]n officer [uses] his judgment to determine whether there is reasonable suspicion to investigate or probable cause to arrest and to determine the amount of force necessary to effectuate an arrest." *Id*.

When applying these principles to intentional claims of, for example, false imprisonment and malicious prosecution, the defendant "must establish that she was acting in the course of her employment and at least reasonably believed that she was acting within the scope of her authority, that her actions were discretionary in nature, and that she acted in good faith." *Id*. at 481. "The mere existence of probable cause . . . is not the proper inquiry. A police officer would be entitled

to immunity under *Ross* if he acted in good faith and honestly believed that he had probable cause to arrest, even if he later learned that he was mistaken." *Id*. "Yet the existence of probable cause is relevant to the analysis; a claim of false arrest or false imprisonment cannot be sustained if the arrest was legal." *Id*. Thus, "showing that an officer made a mistake does not defeat an immunity defense." *Latits v Phillips*, 298 Mich App 109, 115; 826 NW2d 190 (2012).

In this case, the first *Odom* element is satisfied because the record shows that Deputy Zajac's acts "were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority." See *Odom*, 482 Mich at 480. It is undisputed that Deputy Zajac had the authority to arrest individuals such as Stallman while on-duty during his employment as a sheriff for alleged violations of the law. Further, the third *Odom* element also is satisfied because whether to arrest an individual is a "discretionary" act when, as here, the officer uses his judgment to do so. See *id*. at 476. Thus, the first and third *Odom* elements are satisfied.

Whether the second *Odom* element, "the acts were undertaken in good faith, or were not undertaken with malice," *id*. at 480, is not as clear-cut as the first and third elements. Deputy Zajac argues that the second element is satisfied because "there was ample evidence to support Deputy Zajac's decision to arrest Stallman, who had repeatedly threatened Sweetland employees, appeared on the Sweetland premises after having been trespassed and told to cease contact with Sweetland employees, and began yelling at Deputy Zajac as soon as he approached Stallman." Stallman argues that the element is not satisfied because the circuit court dismissed his criminal case for lack of probable cause, and under *Meehan v Mich Bell Telephone Co*, 174 Mich App 538; 436 NW2d 711 (1989), "[w]here there is lack of probable cause, malice may be inferred." *Id*. at 566. In addition, Stallman argues that Deputy Zajac lied, or otherwise submitted false statements, in his police report concerning the arrest. In particular, according to Stallman, Deputy Zajac lied when he wrote that Stallman was standing on a "private" roadway before the arrest, and when the Deputy wrote that he observed Stallman yelling at a truck driver. Contrarily, we agree with Deputy Zajac on this second *Odom* element and rule it is satisfied in his favor.[7]

Initially, we note that the question before us when discussing the second *Odom* element is not whether probable cause existed for Stallman's arrest. Rather, the question is whether Deputy Zajac acted in good faith and honestly believed that his arrest of Stallman was supported by

---

[7] The parties, particularly Stallman, devote significant discussion to the statement in *Meehan* that "[w]here there is lack of probable cause, malice may be inferred." *Id*. However, we believe that this discussion is largely beside the point. Certainly, the lack of probable cause may logically suggest malice in the sense that, for example, a trier of fact may infer that an arrest of a person innocently walking down the sidewalk was undertaken in malice. However, the lack of probable cause does not itself defeat immunity. See *Odom*, 482 Mich at 481 ("A police officer would be entitled to immunity under *Ross* if he acted in good faith and honestly believed that he had probable cause to arrest, even if he later learned that he was mistaken.").

In this case, for the reasons explained in our opinion, even if Deputy Zajac lacked probable cause to arrest Stallman, which we doubt, the record sufficiently shows that he acted in good faith and honest belief that such probable cause existed.

probable cause. See *Odom*, 482 Mich at 481 ("A police officer would be entitled to immunity under *Ross* if he acted in good faith and honestly believed that he had probable cause to arrest, even if he later learned that he was mistaken."). Under these circumstances, we conclude that the record shows that Deputy Zajac had such a good faith and honest belief.

The general facts of this case are largely undisputed. Stallman was upset that he had not received his final paycheck from Sweetland, so he called the OCSD to request assistance with obtaining the paycheck. At Sweetland, Deputy Zajac spoke with office staff, who said they were concerned about Stallman's behavior. Deputy Zajac told Stallman to leave the premises and return a few days later when the owner would be there. Stallman departed the premises as requested but thereafter left inappropriate voicemails in which he threatened to follow the staff to their homes and other places they might visit, including schools, and ominously referenced another workplace shooting as well. The Sweetland staff contacted Deputy Zajac and played the voicemails for him at the office. After hearing them, Deputy Zajac called Stallman and instructed him not to call the Sweetland office anymore as those calls were harassment and, if Stallman returned to Sweetland, he would be arrested.

The following day, Deputy Zajac and Stallman coincidentally drove past each other near Sweetland.[8] Deputy Zajac then drove to Sweetland, and Stallman followed him. A short while later, while Deputy Zajac was in the parking lot writing a report on an unrelated matter, the office staff urgently ran towards his vehicle and said Stallman was yelling and making hand gestures. Deputy Zajac then drove toward Stallman. Deputy Zajac confronted Stallman, and on what was determined to be a public road, arrested Stallman as he was acting in a belligerent manner. Stallman resisted the arrest but was ultimately subdued.

These facts support the entitlement to immunity because the second *Odom* element is satisfied, i.e., Deputy Zajac acted in good faith and honestly believed that the arrest of Stallman was supported by probable cause. See *id*. Whether Deputy Zajac ultimately had the statutory authority to arrest Stallman for trespassing, disorderly conduct, breach of the peace, stalking, harassment, or some other related offense, is not germane to our analysis. Rather, the escalating facts in the record show Deputy Zajac had an honest, good-faith basis to believe that Stallman was engaging in illegal, threatening behavior that warranted an arrest. Specifically, the office staff clearly felt threatened by Stallman, and understandably so in light of his voicemails and his disregard of Deputy Zajac's warning to stay away from Sweetland.

These facts suggest that Stallman violated, at a minimum, MCL 750.552(1)(a), which prohibits a person from "[entering] the lands or premises of another without lawful authority after having been forbidden to do so by the owner or occupant or the agent of the owner or occupant."[9]

---

[8] As unusual as it might seem, the record does indicate that this likely was a coincidence. Stallman explained that he was staying at a campground near Sweetland, and Deputy Zajac explained that he had responded to a nearby hospice to prepare a death report.

[9] We acknowledge that Stallman was standing on a public roadway when he was arrested. However, as Deputy Zajac explained, the general consensus of his co-officers was that Stallman was standing on a private roadway. In this regard, while the layout of the vicinity is not detailed

-10-

Under these circumstances, Deputy Zajac did not act so egregiously as to warrant a conclusion that he acted maliciously, capriciously, or corruptly. See *Odom*, 482 Mich at 474. In other words, as the circuit court noted when dismissing the criminal case against Deputy Zajac, "I understand why the officer was concerned with the behavior of Mr. Stallman and with the reports from the employees of his former employer," and "I understand why he had it in his head that there was going to be trouble here and he might want to put Mr. Stallman under arrest." Like the circuit court, we reach the same understandings.

Therefore, Deputy Zajac satisfies the second *Odom* element.[10]

Accordingly, we conclude that Deputy Zajac is entitled to individual governmental immunity from Stallman's four intentional-tort claims against him because he satisfies all three *Odom* elements.

## IV. INDIVIDUAL CLAIMS

The parties' next dispute is whether Stallman, Deputy Zajac, or neither, is entitled to summary disposition of Stallman's four claims against Deputy Zajac for false arrest, false imprisonment, malicious prosecution, and IIED. It is unnecessary for us to address this question because, as explained in Part III, Deputy Zajac is entitled to immunity from these four claims. Nonetheless, we do so in the interest of completeness.[11]

"A false arrest is an illegal or unjustified arrest, and the guilt or innocence of the person arrested is irrelevant." *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 18; 672 NW2d

---

in the record, Deputy Zajac explained that the land nearby Sweetland is sparsely populated and includes a gravel pit and state hunting land. From this, it is reasonable that one could conclude that Stallman was standing on a private roadway. In other words, Stallman was not standing on an obviously public roadway such as Woodward Avenue, Long Lake Road, or a public residential street.

[10] We acknowledge Stallman's argument that there is an inconsistency between Deputy Zajac's police report, in which he wrote that he observed Stallman yelling at another truck driver, and his testimony at the evidentiary hearing and deposition, in which he said that he observed Stallman yelling at nobody in particular. However, this relatively minor factual inconsistency does not strike us as unusual or suggestive of malice, given that this matter proceeded over the course of a few years, and such factual details may be forgotten or misremembered.

Finally, we acknowledge Stallman's argument that Deputy Zajac necessary lied when he wrote in his police report that he observed Stallman yelling despite later admitting that he could not actually hear the yelling. We dispose of this argument by simply noting that it was entirely reasonable for Deputy Zajac to infer that Stallman was yelling based upon his body and arm gestures.

[11] To the extent that Deputy Zajac did not have an appeal by right to argue that he is entitled to summary disposition of these claims under MCR 2.116(C)(10), because the issue has been extensively briefed on appeal, we treat his claim of appeal as an application for leave to appeal to that extent and grant it. See *Wardell v Hincka*, 297 Mich App 127, 133 n 1; 822 NW2d 278 (2012).

351 (2003). "To prevail on a claim of false arrest . . . , a plaintiff must show that the arrest was not legal, i.e., the arrest was not based on probable cause." *Id*. "Probable cause that a particular person has committed a crime is established by a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person in the belief that the accused is guilty of the offense charged." *Id*. at 19 (quotation marks and citations omitted). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v Alford*, 543 US 146, 152; 125 S Ct 588; 160 L Ed 2d 537 (2004). "[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Id*. at 153. "That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Id*. See also *People v Glenn-Powers*, 296 Mich App 494, 500; 823 NW2d 127 (2012) ("[T]he arresting officer had a legitimate basis to arrest defendant without a warrant. Therefore, the arrest was valid without regard to the officer's subjective belief that he needed a warrant.").

"False imprisonment . . . involves an unlawful restraint on a person's liberty or freedom of movement." *Walsh v Taylor*, 263 Mich App 618, 627; 689 NW2d 506 (2004) (quotation marks and citation omitted). "The elements of false imprisonment are (1) an act committed with the intention of confining another, (2) the act directly or indirectly results in such confinement, and (3) the person confined is conscious of his confinement." *Id*. (quotation marks and citations omitted). "The restraint must have occurred without probable cause to support it." *Id*.

For a claim of malicious prosecution, the plaintiff must prove the following elements:

> 1. Prior proceedings terminated in favor of the present plaintiff;
>
> 2. Absence of probable cause for those proceedings;
>
> 3. Malice, defined as a purpose other than that of securing the proper adjudication of the claim; and
>
> 4. A special injury that flows directly from the prior proceedings. [*Payton v Detroit*, 211 Mich App 375, 394-395; 536 NW2d 233 (1995).][12]

"It is well-settled that one who makes a full and fair disclosure to the prosecutor is not subject to an action for malicious prosecution." *Id*. at 395 (quotation marks and citation omitted). "[T]he only situation in which an action for malicious prosecution would properly lie is where a

---

[12] In *Walsh*, this Court set forth a largely similar four-element test: "In maintaining a claim of malicious prosecution, a plaintiff bears the burden of proving that (1) the defendant has initiated a criminal prosecution against him, (2) the criminal proceedings terminated in his favor, (3) the private person who instituted or maintained the prosecution lacked probable cause for his actions, and (4) the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice." *Walsh*, 263 Mich App at 632-633.

police officer knowingly swears to false facts in a complaint, without which there is no probable cause." *Id*. (quotation marks and citations omitted).

The elements of IIED are as follows: "(1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress." *Roberts v Auto-Owners Ins Co*, 422 Mich 594, 602; 374 NW2d 905 (1985) (quotation marks and citation omitted). "The conduct complained of must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Hayley v Allstate Ins Co*, 262 Mich App 571, 577; 686 NW2d 273 (2004) (quotation marks and citation omitted).

Here, as noted previously, Stallman's three claims of false arrest, false imprisonment, and malicious prosecution each require a lack of probable cause. See *Peterson Novelties*, 259 Mich App at 18; *Walsh*, 263 Mich App at 627; *id*. at 632-633. We conclude that, while perhaps not realizing it at the time, Deputy Zajac had probable cause to arrest Stallman for misdemeanor stalking, MCL 750.411h, which is defined as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested," MCL 750.411h(1)(e). MCL 750.411h(1)(a) defines "course of conduct" as "a pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose," and MCL 750.411h(1)(d) defines "harassment" as "conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress."[13]

Here, as explained, Stallman left inappropriate voicemails with Sweetland office staff in which he threatened to follow the staff to their respective homes and other locations they might visit. He also referenced a workplace shooting. Deputy Zajac was aware of these voicemails. The day following those voicemails, Stallman appeared near the Sweetland premises and waved at the staff and, according to the staff's brief discussion with Deputy Zajac, was yelling at others nearby. This behavior, according to Deputy Zajac, made the staff appear afraid. These facts, taken as a whole, constituted two or more separate acts demonstrating a continuity of purpose of harassment. See MCL 750.411h(1)(a), (e), and (d). Deputy Zajac therefore had probable cause to arrest Stallman for misdemeanor stalking, notwithstanding that some of the allegedly criminal behavior was committed outside his presence, see MCL 764.15(1)(d), and that he did not originally cite stalking as a basis for his arrest, see *Devenpeck*, 543 US at 152. Consequently, because Stallman's

---

[13] MCL 764.15(1)(d) provides that "[a] peace officer, without a warrant, may arrest a person [when] . . . [t]he peace officer has reasonable cause to believe a misdemeanor punishable by imprisonment for more than 92 days or a felony has been committed and reasonable cause to believe the person committed it." Misdemeanor stalking is punishable by up to one year in jail. See MCL 750.411h(2)(a). Therefore, an officer may arrest an individual for misdemeanor stalking even on the basis of conduct not committed in his or her presence.

arrest was supported by probable cause, there is no genuine issue of material fact as to the claims of false arrest, false imprisonment, and malicious prosecution.

With respect to the IIED claim, as we have previously explained and as the circuit court recognized when dismissing the criminal case against Stallman, Deputy Zajac acted reasonably and understandably when confronting and arresting him. This is true regardless of the fact that the criminal charge against Stallman ultimately was dismissed. Therefore, there is no genuine issue of material fact regarding whether Deputy Zajac engaged in "extreme and outrageous conduct." See *Roberts*, 422 Mich at 602.

Finally, we note that Stallman argues that Deputy Zajac is collaterally estopped from arguing that he had probable cause for the arrest. We disagree. In *Rittenhouse v Dixon*, unpublished per curiam opinion of the Court of Appeals, issued October 16, 2024 (Docket No. 366376), the plaintiff maintained claims such as malicious prosecution against a detective after the circuit court dismissed criminal charges against the plaintiff for lack of probable cause. *Id*. at 2. In relevant part, the plaintiff argued in his civil case that the detective was collaterally estopped from arguing that probable cause existed for the criminal prosecution. *Id*. at 5 n 4. We disagreed, reasoning as follows:

> We also reject plaintiff's claim that defendant is collaterally estopped from arguing probable cause existed to support plaintiff's criminal prosecution in light of the circuit court's holding that no probable cause existed for the bindover. In brief, collateral estoppel does not apply because the issues in this civil case against defendant and the issues in the criminal prosecution of plaintiff are clearly not identical. Further, defendant was not a party to the criminal case and was not in privity with the prosecution. Finally, because plaintiff asserts collateral estoppel offensively, he must establish mutuality of estoppel and he cannot because, again, defendant was not a party in the case of plaintiff's criminal prosecution. [*Id*. (citations omitted).]

We find this case persuasive, see *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017), and apply it here to conclude that Deputy Zajac is not collaterally estopped from arguing that the arrest was supported by probable cause.

For these reasons, we conclude that Deputy Zajac was entitled to summary disposition under MCR 2.116(C)(10) of Stallman's four intentional-tort claims of false arrest, false imprisonment, malicious prosecution, and IIED.[14]

---

[14] Deputy Zajac argues that the claims of false arrest, false imprisonment, and IIED are barred by the applicable statutes of limitation. The statute of limitations for false arrest and false imprisonment is two years. See MCL 600.5805(3); *Bellamy v Target Stores*, unpublished per curiam opinion of the Court of Appeals, issued November 19, 2002 (Docket No. 235334), at 3. The statute of limitations for IIED is three years. See *Campos v Oldsmobile Div, Gen Motors Corp*, 71 Mich App 23, 26; 246 NW2d 352 (1976). The United States Court of Appeals for the

V. CLAIMS AGAINST OAKLAND COUNTY

The parties dispute whether Stallman established a genuine issue of material fact as to his claims against Oakland County for vicarious liability and third-party beneficiary, and whether Oakland County is entitled to immunity. The parties also dispute whether Stallman properly served Oakland County. We agree with Oakland County that Stallman failed to establish a genuine issue of material fact regarding those two claims and that it is entitled to immunity.

MCL 691.1407(1) of the GTLA states that "[e]xcept as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." However, "[u]nder the doctrine of vicarious liability, an employer is generally liable for the torts its employees commit so long as those torts are within the scope of their employment." *Yoches v City of Dearborn*, 320 Mich App 461, 475; 904 NW2d 887 (2017). "Vicarious liability may be imposed on a governmental agency in those instances when governmental immunity does not apply and an employee, while acting during the course of and within the scope of authority, commits a tort." *Malcolm v City of East Detroit*, 437 Mich 132, 140; 468 NW2d 479 (1991). However, vicarious liability is not necessarily imposed on the governmental agency merely because an employee committed a tort during the course of and within the scope of his or her authority:

> Even when the tort is committed during the employee's course of employment and is within the scope of the employee's authority, the governmental agency is not automatically liable. Where the individual tortfeasor is acting on behalf of an employer, the focus should be on the activity which the individual was engaged in at the time the tort was committed. *A governmental agency can be held vicariously liable only when its officer, employee, or agent, acting during the course of employment and within the scope of authority, commits a tort while engaged in an activity which is nongovernmental or proprietary, or which falls within a statutory exception*. The agency is vicariously liable in these situations because it is in effect furthering its own interests or performing activities for which liability has been statutorily imposed. However, if the activity in which the tortfeasor was engaged at the time the tort was committed constituted the exercise or discharge of a governmental function (i.e., the activity was expressly or impliedly mandated or authorized by constitution, statute, or other law), the agency is immune . . . . [*Ross*, 420 Mich at 624-625 (emphasis added).]

Sixth Circuit holds that claims for false arrest and false imprisonment do not accrue "until a favorable termination of the criminal proceedings occurred," *Peterson Novelties*, 259 Mich App at 15, although some other federal circuits hold that such claims accrue "immediately," *id*. at n 12. But see *Killian v Fuller*, 162 Mich App 210, 217; 412 NW2d 698 (1987) ("[A] claim for false imprisonment . . . accrues at the time of the plaintiff's release from detention."). We need not decide precisely how or when the applicable statutes of limitation were triggered here because, for the reasons explained in our opinion, Deputy Zajac is entitled to summary disposition on the basis of both immunity and lack of material fact.

"The statutory exceptions contained in the GTLA are: (1) the highway exception, MCL 691.1402, (2) the motor vehicle exception, MCL 691.1405, (3) the public building exception, MCL 691.1406, (4) the governmental hospital exception, MCL 691.1407(4), (5) the proprietary function exception, MCL 691.1413, and (6) the sewage system event exception, MCL 691.1417." *In re Bradley Estate*, 494 Mich 367, 378 n 21; 835 NW2d 545 (2013).

In this case, Oakland County is entitled to summary disposition for two reasons. First, as explained in Part IV, there is no genuine issue of material fact with regard to the four intentional-tort claims against Deputy Zajac. Therefore, because Deputy Zajac did not commit an intentional tort, it follows that no vicarious liability may be imposed on Oakland County as his employer. Second, even if there was a genuine issue of material fact as to one or more of the intentional-tort claims, Oakland County still would not be vicariously liable because Deputy Zajac acted within the course of employment and scope of authority, was not engaged in a proprietary function, and none of the six GTLA exceptions are applicable. See *Ross*, 420 Mich at 624-625; *In re Bradley Estate*, 494 Mich at 378 n 21. That is, under *Ross*, Oakland County is entitled to immunity.

With regard to Stallman's claim for "third-party beneficiary of Indemnification Agreement," the indemnification agreement provides that "[w]henever a judgement for damages is awarded against an officer or employee of the County as a result of a civil action for personal injuries or property damage caused by the officer or employee while in the course of employment and while acting within the scope of his or her authority, the County of Oakland shall indemnify the officer or employee or pay, settle, or compromise the judgment." According to Stallman, he is an intended third-party beneficiary of that indemnification agreement, such that he may enforce any judgment that he obtains against Deputy Zajac against Oakland County itself. See MCL 600.1405 ("Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee. . . .").

We need not decide whether Stallman may enforce the indemnification agreement as a third-party beneficiary. As previously explained, both Deputy Zajac and Oakland County are protected by immunity and, alternatively, Stallman has failed to establish a genuine issue of material fact with respect to his claims. Therefore, because Stallman cannot prevail against Deputy Zajac, it follows that he cannot recover as an intended third-party beneficiary of the indemnification agreement.[15]

## VI. CONCLUSION

For the reasons explained, we conclude that Deputy Zajac is entitled to individual governmental immunity and summary disposition under MCR 2.116(C)(7) and (C)(10) from Stallman's four intentional-tort claims against him. Moreover, Oakland County is entitled to governmental immunity and summary disposition under MCR 2.116(C)(7) and (C)(10) of Stallman's claims of vicarious liability and third-party beneficiary against it. Having so concluded,

---

[15] Because Oakland County is entitled to summary disposition under MCR 2.116(C)(7) and (C)(10), we need not address whether the trial court correctly granted it summary disposition under MCR 2.116(C)(3) for failure of service of process.

-16-

to the extent that the OCSD remains as a defendant in this case, it also should be dismissed as a party.

We affirm the trial court to the extent that it granted summary disposition in favor of Oakland County, reverse the trial court to the extent that it denied summary disposition in favor of Deputy Zajac, and remand to that court for entry of summary disposition in favor of all three defendants. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Colleen A. O'Brien
/s/ Adrienne N. Young